UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

X----------------------------------------------------------X

MARY P. COLVIN and JOHN COLVIN,                    07 CIV 4826 (WJM)

                Plaintiffs,          **PLAINTIFFS'**
                                  **AFFIRMATION IN**
                                  **OPPOSITION TO**
                                  **DEFENDANTS THIRD**
              -against-          **MOTION TO DISMISS**

VAN WORMER RESORTS, INC., and HOTEL
PUNTA COLORADA, S.A., a/k/a               RETURNABLE:
PUNTA COLORADA,                           SEPTEMBER 15, 2008

                Defendants.

X----------------------------------------------------------X

        GEORGE W. CLARKE, ESQ., an attorney admitted to practice before the courts

of the State of New York, under the penalties of perjury, affirms to the truth of the

following:

        1.     I am an attorney with the Law Firm of Tierney & Tierney, Esqs., attorneys

for the plaintiffs in this action for personal injuries suffered as a result of defendants'

multiple breaches of contract and negligence. As such I am fully familiar with the matters

set forth herein.

        2.     This Affirmation in Opposition is submitted in opposition to the

defendants' Third Motion to Dismiss now returnable on September 15, 2008.

I am reluctant to take seriously this third motion to dismiss made by defendants because

when I pointed out to defense counsel George Holland that their prior motions had not

addressed our first cause of action, for breach of defendants' maritime contract printed by

the defendants,[1] and confirmed between the parties, in New Jersey, which maritime contract was breached by defendants' act of providing an unseaworthy moveable dock not affixed to land (see the subject 2/4/05 contract and 9/26/05 confirmation submitted as our prior Exh. C[2]) Mr. Holland admitted defendants did not care about Plaintiffs' first cause of action since the damages from such an action, in their belief, would be minimal. Holland believed these damages would only involve the return of the Colvin's payments, drawn by Defendants in California from Plaintiffs' New Jersey bank (which creates New Jersey jurisdiction as to a contract entered into in New Jersey, under McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

3.     Regardless of any dispute over damages, if the larger personal injury damages are only awardable under a tort cause of action, which Plaintiffs' dispute (see O'Connor v. Sandelane Hotel Company, 496 F3d 312 (3d Cir. 2007) cited with approval by defendants, and the maritime contract decisions cited in the Brief we submitted in opposition to defendants prior motions, which Brief is incorporated herein) then once the Court assumes admiralty jurisdiction over the claim arising under the maritime contract printed by Hotel Punta Colorada in New Jersey, then the tort cause of action would be amenable to jurisdiction in this Court as well, under principles of pendent and ancillary jurisdiction. This would be so even if the tort from a fall on a moveable dock suffered by plaintiff while boarding defendants' fishing vessel under defendants direction (booked

---

[1] It was drafted and printed by Edward Dalmau, acting in California on behalf of defendant Hotel Punta Colorada, on plaintiffs' fax machine located in plaintiffs' New Jersey home.

[2] Since defendants have now reasserted their prior motions, plaintiffs refer to the Exhibit letters of our Exhibits submitted on the previous motions. If the court requires that these exhibits be resubmitted on this motion, we will arrange to do so.

pursuant to the said maritime contract) is not independently subject to federal jurisdiction under theories of admiralty or diversity.

     4.     These facts, we believe, were fairly conceded at the oral argument of the prior motions, the only real question (once the issues of service were worked out) being whether this maritime contract/tort, and maritime/diversity action, would proceed to trial in the American Plaintiffs' venue, New Jersey, or in the equally American Defendants' venue, California. Once service was established, we believed the only question then would be one purely of venue, with the transfer to California being available, even if defendants, under the International Shoe standards, are not amenable to specific personal jurisdiction in New Jersey.  At that time, the question of federal jurisdiction over a dispute between the New Jersey citizens and residents and the two Defendant California corporations (both present and operating in California) seemed to be uncontested, at the very least as a matter of diversity.

     5.     Whether it is necessary to resolve at all the scope of the admiralty jurisdiction present as well (contract only or contract and tort)[3] is it necessary to address such questions once defendants have conceded they don't care about the admiralty contract claims, and will not oppose them?[4] Notably, in their third motion to dismiss, defendants again fail to address these contract claims, and fail to assert any reason the

---

[3] This would involve the question of whether a moveable dock owned and positioned by the defendant boat owner/operator, and used only for its boats, is also subject to admiralty jurisdiction under the new Sisson/Grubart "substantial relationship" test, enunciated in the 1990's by the U.S. Supreme Court. Plaintiffs still assert it would and does because the moveable dock is not affixed to land, and it was moved and put in place out over a navigable waterway (Sea of Cortez) by the defendant boat operator, and the offending damage was caused by the operation of the defendants' vessels.

[4] It is clear from defendants' papers that, as before, they raise no arguments against Plaintiffs admiralty contract claim, based on their claim that Plaintiffs' damages are too negligible in their belief. However, unlike with diversity, there is no jurisdictional limit on admiralty claims, so Mr. Holland's orally stated reason for conceding to our contract action, not repeated in their written papers, is unaccountable.

3

admiralty contract claims should be dismissed or disregarded (apart from their general assertion of lack of service on HPC).

6. Given Mr. Holland's oral concession that they will not oppose our admiralty contract claims, which concession has been borne out again in their most recent application, now, apart from reasserting our prior arguments in favor of admiralty jurisdiction (both contract and tort) and diversity jurisdiction as well[5] (together with such pendent and ancillary jurisdiction as to any additional claims which are not otherwise amenable to federal jurisdiction)[6] we need now only address the following questionable statements of defendants which have now been reasserted. After that we will address the issue of service on Hotel Punta Colorada (hereinafter "HPC") through service on Julian Myers (Exh. A hereto) opposed and objected to by defendants, and then on Edward Dalmau (Exh. B hereto) not opposed or objected to by defendants.[7]

## DISPUTED ALLEGATGIONS IN CARLOS VAN WORMER'S
## SECOND SUPPLEMENTAL DECLARATION OF AUG. 19, 2008

7. In his latest unsworn declaration of August 19, 2008, Carlos Van Wormer states the following:

8. **"Hotel Punta Colorada, S.A. is a Mexican entity . . . domiciled in Mexico."** Because defendants are not contesting Plaintiffs' maritime contract claim, regarding it as unimportant, they do not acknowledge the fact that both the contract (former Exh. C); the

---

[5] For the unavoidability of diversity jurisdiction either in New Jersey or California, in this and similar cases, see O'Connor v. Sandelane Hotel, Co., 496 F 3d 312 cited with approval by defendants.

[6] Ancillary and pendent jurisdiction apparently do not apply to extend the Court's jurisdictional reach in diversity cases since diversity would only be raised where the claims are non-federal, or local only, so additional local claims would not have to be made pendent. They would be subject to the same diversity jurisdiction already asserted, as they are here.

[7] Significantly, Eddie Dalmau, also personally served herein as HPC's primary (only?) employee and managing agent in California, presents no affidavit herein, and defendants do not dispute or contest the validity of our service on HPC through Dalmau. See below.

4

confirmation (former Exh. C) and HPC's website as well (former Exh. F) all give P.O.

Box 9016, Calabasas, CA 91372-9016 as the contact address for HPC. (Also see the same

letterhead on plaintiffs' prior contracts going back to 2002, previously submitted as Exh.

M). All these documents were prepared and drafted by HPC's booking agent, Eddie

Dalmau, at one of HPC's three offices in California (see below) and then Dalmau printed

these documents in New Jersey by dialing and engaging the operation of the Colvins'

facsimile machine, which then printed out the contract and confirmation in New Jersey,

back in February and September 2005, respectively. The contract and confirmation were

thus created and entered into in New Jersey all by Dalmau's unilateral operations.

      9.     Eddie Van Wormer's business card (former Exhibit A) (where, as an

American, he is listed as the Owner of HPC) gives the same Calabasas, California P.O.

Box 9016, together with various California phone numbers that the Colvins have

repeatedly used to reach HPC in California. The defendants' website repeats this

information as well, with all the California numbers being answered in California by

Eddie Dalmau or his wife Shannon, the Chief Operating Officer of the control group's

parent, the defendant Van Wormer Resorts. (See our prior Exh. N). Based on the research

of our California process servers, investigating, without limitation, with the U.S. Postal

Service and the California telephone directories (and as verified by their successful

service calls) Dalmau works at the HPC offices located at 23621 Park Sorrento,

Calabasas, CA 91302 (an office building) (Exh. C hereto). He picks up the HPC mail at

Mailboxes, Etc. at 23679 Calabasas Road, Box # 769, Calabasas CA 91302 (former Exh.

B and N)[8] and he lives and works on behalf of HPC, just a few miles outside Calabasas at 14 Oakleaf Avenue, Oak Park, CA 91377. This address is recognized by the U. S. Postal Service as an office of HPC based on the U. S. Postal Service records annexed as Exh. D.

10.    The Oak Park address is where Dalmau was served on behalf of HPC on August 8, 2008, twelve days before HPC made their current motion to dismiss without disputing the efficacy of the service on Dalmau, as the sole representative of HPC present in California (though possibly, also, with his wife). HPC only disputed the prior service on HPC through the control group's[9] service agent Julian Myers, which additional service was done at the Court's direction based on directives we received at the initial motion conference on July 2, 2008. (See service discussion below).

11.    Absent discovery we do not know which of his three HPC offices in California that Dalmau used to fax out the Contract, Confirmation and Insurance Declaration (see our former Exhs. C and E) to the Colvins in New Jersey, but all of the Colvins' telephonic discussions with HPC from New Jersey, and fax exchanges, over the course of five seasons they attended HPC (2002-2007) were conducted through one of HPC's California numbers in California, through Dalmau or his wife. As stated, Dalmau (and the Van Wormers as well) always made it very clear to the Colvins that their

---

[8] The parent company of the Van Wormer control group, Defendant Van Wormer Resorts, is also located at 23679 Calabasas Road, Box # 769, Calabasas CA 91302 based on the return address on their business envelope (See Exh. E annexed hereto) and on the letterhead on our former Exh. N.

[9] Plaintiffs believe it is obvious and not factually contested that the four Van Wormer hotels, under the aegis of parent company Van Wormer Resorts, Inc., a domestic California company owned by the American Van Wormer family (hailing from Kansas and California) form a control group with Van Wormer Resorts, Inc., already served, as the parent and controlling company. This means that Julian Myers, as service agent for the control group and for the parent, as has been conceded, is also service agent for the individual hotels also operating in California (see below) as we believe the Court has already indicated is the fact, based on the court's directive to the undersigned, on July 2, 2008, to serve Mr. Myers on behalf of HPC. Therefore, we assert the service on Myers was valid for all the related defendants, owned by the American Van Wormers, and present in California.

payments to HPC had to be collected in New Jersey for deposit in HPC's California bank accounts, and no payments could be made to HPC in Mexico (for the obvious purpose announced by the American Van Wormers,[10] of collecting and keeping their HPC income and deposits in the United States rather than in Mexico).

12.     Based on these and other facts, from as early as 2002 and as long as the Colvins have been calling California to make reservations with HPC (the only Van Wormer hotel they ever stayed at) HPC has been present in, and doing business with multiple New Jersey residents from their known business offices, which are all present in California. Thus, HPC is not purely a Mexican entity only, as claimed by Carlos. Once the falsity of Carlos' statement to the contrary is realized, the accuracy of the balance of Carlos Van Wormer's statements become equally suspect, and all his statements must be disregarded as well.[11]

13.     Next, having chosen to ignore Dalmau while refusing to mention five years of contracts, confirmations, and one insurance certificate being printed by Dalmau in New Jersey (see former Exh. E) that were entered into by Dalmau not only with the Colvins but with multiple other residents of New Jersey (some willing to testify in New

---

[10] We have also verified from other guests of the Van Wormer resorts, and from the telephone book, that Edward Van Wormer and Cha Cha Van Wormer, the founders of all four resorts including HPC, reside at 440 Windrose Way, Chula Vista, CA 91910-7442. Because of this, if not admiralty, this is certainly a diversity dispute between Americans, where jurisdiction in a Federal district court is constitutionally guaranteed to the plaintiffs, as part of their federal rights as U. S. citizens. The Constitutional guarantee to all Americans, of access to the U. S. Federal Courts to resolve disputes with other citizens and residents of the United States, can in this regard be seen as the seminal "forum selection clause" to which all Americans are bound by their citizenship, once we view the U. S. Constitution under Locke's social contract theories. The Mayflower Compact is one constitutional source that supports this view. See discussion of defendants' case of Carnival Cruise Lines v. Shute, 499 US 585 (1991) infra.

[11] Under O'Connor, cited with approval by defendants, at 496 F 3d at 316 the Third Circuit noted that, absent a jurisdictional hearing, Plaintiffs factual allegation must be accepted as true, and all factual disputes resolved in Plaintiff's favor, on a motion to dismiss. Thus, given defendants' silence, Plaintiffs claim as to its contract cause of action must be accepted as true, as in fact applies to all factual claims and disputes that have been raised herein.

7

Jersey for the Colvins) it is not true for Carlos to say that neither defendant has had
sufficient minimum contracts with New Jersey so as to uphold personal jurisdiction over
them in this venue. Entering into a maritime contract in New Jersey, paid for with New
Jersey monies withdrawn from a New Jersey bank (with this going on for multiple years
with multiple clients)[12] and then sending its insurance certificate into the forum state to
help the injured plaintiff, certainly are sufficient minimal, purposeful contacts to support
New Jersey jurisdiction over the defendants. Carlos Van Wormer cannot now rebut or
address these contacts since his attorneys have affirmatively elected to ignore plaintiffs'
maritime contract claim, since they believe the damages arising under that claim are too
negligible to justify opposition.

14.     Further, Carlos' claim that defendants have never had assets in New Jersey
must be counterbalanced by Plaintiffs' proof that defendants on multiple occasions have
removed assets from New Jersey, by cashing New Jersey bank checks and drafts
(additional multiple contracts separate from the maritime contract at issue). In addition,
defendants voluntarily faxed their insurance certificate (a significant asset of theirs) to the
Colvins in New Jersey, to be printed up by the Colvins' fax machine, in order to "help"
the injured plaintiff. (See former Exh. E). Defendants, in none of their three motions,
have ever addressed this asset shipment into New Jersey, or given any demonstration that
this, standing alone, confers full, specific jurisdiction over defendants on this Honorable
Court. Based on these concession, Carlos' claim that HPC has never done business in
New Jersey and never shipped any assets into New Jersey is certainly false, particularly

---

[12] In the seminal case of McGee, there was only one in-state client, which the court deemed sufficient to
confer jurisdiction regarding the out-of-state defendant's contract with that single client. Multiple clients
over many years just makes the argument stronger in our case.

since, under <u>McGee,</u> cashing New Jersey checks in the furtherance of a New Jersey maritime contract with plaintiffs, is "transacting business" in New Jersey.

15.    Carlos's next statement, that defendants have never targeted advertising in New Jersey, is rebutted by the HPC/Van Wormer Resorts advertising postcard that the Colvins received from California (like, we believe, their other New Jersey witnesses). (Former Exh. H). This HPC postcard advertising was mailed by the U.S. Postal Service from California, not Mexico, presumably by Dalmau.

16.    Contrary to what Carlos states, all these acts were purposefully carried out (primarily by Dalmau on behalf of HPC) in order to "avail HPC specifically, and Van Wormer Resorts generally of the law and policy benefits of New Jersey."  As just one example, the banking laws and regulations of New Jersey, enforced by New Jersey officials, were designed to assure adequate cash reserves would be available when HPC submitted the reservation checks of their N.J. clientele (including the Colvins) to the appropriate New Jersey bank for payment. (See <u>McGee</u> for further elucidation).

17.    Also, Van Wormer is wrong when he claims that New Jersey, with over 10 witnesses present in our jurisdiction (many who witnessed the accident as well as all the plaintiff's N.J. medical providers) contains no witnesses, when in fact, by his own admission, no relevant witnesses are present in California (except Dalmau, whose potential testimony as to paperwork is not really in dispute). Plaintiffs need to be present at their own trial. On the defendants' side, only the so-far silent Eddie Van Wormer, who witnessed the accident, needs to testify, and he can testify by deposition, so none of the Van Wormers, who are protected by insurance, need to be present in New Jersey at all, nor will they be inconvenienced. For the reasons we have previously stated, and repeated

below, only California and New Jersey are viable jurisdictions to handle this contract/tort

claim between individual American citizens and American owned companies operating in

many respects out of California.[13] Because the expatriate defendants acknowledge that

they have no witnesses, and allegedly no presence in California (as HPC falsely alleges it

is not even present in California) New Jersey (with numerous witnesses and a public

interest in the protection of its citizens and doctors) is far more convenient to both sides

than California (which has no witnesses or interest).[14] If the expatriate Americans being

sued have to hire admiralty attorneys in the U.S., it is certainly no more inconvenient to

hire them in New Jersey than in California, and so far they have hired attorneys in both.

Therefore, the balance of inconvenience clearly falls in favor of New Jersey and the

plaintiffs and against California which is convenient to no one. If the defendant American

are haled out of Mexico, how more inconvenient is to be haled to New Jersey than

California? No real inconvenience can accrue to defendants who can defer the spadework

---

[13] As stated, because of the constitutional right of access to federal courts for diversity claims, jurisdiction
in Mexico, adjacent to navigable waterway where the accident happened, is constitutionally precluded by
virtue of the Constitutional "Forum Selection Clause" by which all Americans are bound, as a reciprocal
matter of right and corresponding duty. The U. S. Constitution reserves to Americans the absolute right to
sue their fellow Americans (as well as foreigners present in the US, or subject to our long arm jurisdiction)
in U. S. Federal Court.

[14] See O'Connor v. Sandelane Hotel Co., 496 F.3d 312, 325 (3rd Cir., 2007) cited with approval by
defendants even though O'Connor resolved the jurisdictional issue in favor the plaintiff's election (just as
we seek here) where the court stated:

> As the Supreme Court has stated, "[w]hen minimum contacts have been
> established, often the interests of the plaintiff and the forum in the exercise of
> jurisdiction will justify even the serious burdens placed on the alien defendant."
> See Asahi, 480 U.S. at 114, 107 S.Ct. 1026. Indeed, Asahi is the only Supreme
> Court case ever to present so compelling a situation, and it involved a suit in
> California between parties from Japan and Taiwan. See id. Unlike California's
> "slight" interest in that case, id, Pennsylvania has a "manifest interest in
> providing effective means of redress" when a foreign corporation reaches into
> the state and solicits its citizens. See McGee v. Int'l Life Ins. Co., 355 U.S. 220,
> 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Furthermore, requiring the O'Connors
> to litigate in Barbados would saddle them with a burden at least equal to Sandy
> Lane's burden in Pennsylvania.

10

to their admiralty insurance attorneys who can be retained in any maritime location in the world, New Jersey included, which in fact has already been done.

18.     Based on this, and based on defendant's refusal to acknowledge or address the interstate maritime contract at issue, printed by defendant HPC in New Jersey, we can hardly find any statement in Carlos Van Wormer's affidavit that is true, and all his unsworn statements and declarations can safely be disregarded.

19.     In response to their most recently filed Memorandum of Points and Authorities by Defendants dated August 20, 2008, defendants again overlook the following points previously made and supported in our prior Memorandum of Law submitted in opposition to the defendants' prior motions.

        a. A Maritime Contract entered between two US residents gives a federal court general maritime jurisdiction in either of the parties' districts, with the question of venue or forum non conveniens them being the only issue, depending primarily on the locus of the witnesses. Here the locus of the witnesses runs in favor of New Jersey over California by 10 to 1, or 10 to 0 depending on whether we count Eddie Dalmau as a witness or not, and defendants, over the course of three motions, claim they have no presence or witnesses in California, and have refused to mention Dalmau at all, or to cite him as a potential witness to anything. For that reason they have failed to dispute the efficacy of the service made on Dalmau, and don't claim him as a witness to any disputed fact, nor have they chosen to submit any affidavit on his behalf.

        b. Under Diversity of Jurisdiction brought as to a contract and insurance policy printed by defendants in New Jersey after numerous telephone calls and faxes into this state, the Federal Court can hold the out-of-state defendant subject to New Jersey

11

jurisdiction based on that contract, and the payout of funds from a New Jersey bank, as the basis for long-arm jurisdiction.

20.    Defendants, as stated, cannot rebut either of these points since they falsely claim "the case involves a straightforward [sic] personal injury lawsuit..." confirming Holland's decision to ignore the maritime contract, and plaintiffs' First Cause of Action for Breach of Contract in its entirety. If we go to Wright and Miller on Federal Jurisdictions, one can immediately see the discussion on admiralty jurisdiction is broken down into two sections, one on contract where a written agreement was entered into, and the second on tort where, generally, no agreement, between the contesting parties, was entered into, with contract analysis receiving priority where both apply. The treatment of jurisdiction of course is different for both, with contract tending to look where the contract was prepared, printed and entered into, and the tort actions looking more to where the tort occurred. (This is why defendants want to ignore the contract and focus only on the plaintiff's fall over navigable waters[15]).

21.    We know why defendants want to cram this square peg of contract into the round hole of tort, and why they want to pretend, by silence, that Dalmau did not print the subject maritime contract in New Jersey where it was confirmed and entered into. George Holland basically admitted to me that they are going to lose on the issue. So they have to ignore it. (But not to worry, the damages are low).

22.    While this makes their entire Memorandum of Points completely suspect, we will address what little remains of sense as follows:

---

[15] Fortunately for plaintiff, there are no courts at sea and, based on the Constitution, the federal courts sitting in Admiralty have jurisdiction over all the world's navigable waterways, no matter where they are located in the world. If two Americans get into a dispute over an accident that occurred on or over a foreign body of navigable water, can they sue in U. S. Courts? The answer is obviously yes, to the exclusion of all other courts as well.

- We do not claim Mary fell through "loose boards." She fell through a hole created by a broken board, broken lengthwise, which left a gap. Mary never claimed that what remained of the broken board was loose. (One board only was involved, not multiple boards). Defendants make no claim to rebut the claim that this board was broken at the spot the boats moored and loaded and unloaded, by those very operators of the defendant boats, which ever for a tort claim (with no contract evident) creates maritime jurisdiction. Therefore we regard this point as admitted by defendants.

- **"The accident which constitutes the entire subject matter of this action... took place... in Mexico."** The maritime contract, which provides the basis for admiralty jurisdiction, was negotiated, printed, entered into, confirmed and paid for in New Jersey, with the insurance certificate insuring it being shipped, as defendants' most relevant asset in this case, into New Jersey, by defendant HPC. This provides the basis for jurisdiction, not the location of the accident, which in this case is constitutionally precluded, and cannot support jurisdiction, given the Colvins absolute constitutional right to a trial in a U. S. Court. Also, the accident happened over navigable waters, not technically on Mexican soil.

- **"All the witnesses are located in Mexico."** Ten witnesses, including other New Jersey guests of defendants, and all medical providers, are located in New Jersey.[16] Because, worst-case scenario, this is a diversity action between Americans, the choice of venue here, in the parties' joint native language, is California or New Jersey. Mexico is not a constitutional option given the Constitutionally-mandated Forum Selection Clause contained in the U. S. Constitution by which all Americans, as a

---

[16] Note that plaintiffs have named their multiple witnesses in New Jersey. Other than Von Wormer (presumably Eddie) defendants have not named any.

13

birthright, are bound.[17] Regardless of the number of witnesses in Mexico (who can be deposed) there are no witnesses in California (except the unmentioned Dalmau). Defendants (by ignoring Dalmau) claim they aren't really present in California and just have a mail drop there (but who picks up the mail?) If we accept this as an admission on the part of the expatriate American defendants that they have no relevant witnesses in California, we can pretty much eliminate California as convenient to anyone. With Mexico precluded by the Constitution, this leaves New Jersey where 90% of the witnesses are, and where the subject maritime contract (not mentioned by defendants) was entered into, printed and paid for. QED.

- **"It is also undisputed that ...[HPC] is a Mexican entity**." Based on the clearly false and misleading statements of Carlos Van Wormer, this is hotly contested as shown above, and below. Because of his false statements and oversights Carlos cannot be trusted on this point.

- Defendants have **"literally no contacts with New Jersey...."** This is false as shown throughout plaintiffs' papers and can only be alleged if we ignore the contracts, checks, insurance certificates, post card advertising, defendants' extensive past and future New Jersey clientele and Dalmau's involvement, which defendants have so far consistently attempted to do, precisely for this illegitimate reason.  Plaintiffs' positive proof should easily prevail over defendants' embarrassed silence, especially given defendants reliance on O'Connor v. Sandelane Hotel Co., as explicated in FN 11 supra.

- Defendants' statement that this contract action **"arose solely out of activities which occurred in Mexico, and had nothing.... to do with"** the contracts and

---

[17] See FNS 10 and 15 supra.

14

contacts defendants **"may have had"** or may have entered into in New Jersey is, again, simply not true, once we focus on the contract which confers jurisdiction, and the insurance certificate and post card advertisement which found their way into Colvin's fax machine and mailbox by virtue of defendants' (Dalmau's) unilateral actions.

• Since our contract cause of action (purposefully never mentioned by defendants) clearly relates to a maritime contract entered into and printed in New Jersey, how can defendants say that **"none of plaintiffs claims arose out of any supposed activity [by defendants] in New Jersey"**? Only by self-delusion, we suppose.

### SERVICE ON JULIAN MYERS AND EDWARD DALMAU
### FOR HOTEL PUNTA COLORADA

23.   Relevant to our service on HPC in California, Defendants' Memorandum of Points states:

• **"Hotel Punta Colorada... has no office or employees anywhere in the United States and does not transact business in the United States."** Compare this statement at page 4 of the defendants' August 20, 2008 Memorandum of Points, with Carlos Von Wormer's unsworn declaration (Defendants' Exhibit 2) of May 16, 2008 (para.7) where Carlos states:

> The one and only "contact" which [HPC] has in the United States is a mail drop where mail addressed to it may be left at a Mailboxes, Etc, store located at 23679 Calabasas Road, Calabasas, California 91302 [north of Los Angeles, 175 miles from Mexico, and a good 1000 miles from the subject HPC hotel at the tip of the Baja].

24.   Based on this, who picked up the mail everyday according to Carlos?  He doesn't say but investigation shows the same man, Eddie Dalmau, who lives a few miles from Calabasas Road (in Oak Park, California) and who answered and returned all the

15

Colvins' phone calls to and from California, and who faxed out the HPC contracts,

confirmations and insurance policies, and who mailed the HPC post-card ads from

California to New Jersey, and who collects and cashes the HPC checks sent to him in

California, is the same man who, daily, picks up the HPC mail from Mailboxes, Etc. If

HPC runs a mail drop north of Los Angeles, almost 1000 miles from the subject hotel

near the lower tip of the Baja, and the HPC collects all its money in its California Banks,

how can it be true that HPC " has no employees" and "does not transact any business in

the United States" as Carlos Van Wormer states? Of course, Eddie Dalmau is their

employee, and he runs the HPC office close by to the Mailboxes, Etc. mail drop at 23621

Park Sorrento, Calabasas CA 91302. This was confirmed on August 5, 2008 by the U.S.

Postal Service as the physical street address for Hotel Punta Colorada in California since

this is the physical address which had to be provided at the time HPC applied for US Post

Office Box 9016 in Calabasas. (Exh. C hereto).

• Also before that on July 28, 2008 the U.S. Post office confirmed a

third California address for HPC, confirming that "Hotel Punta Colorada c/o Edward

Dalmau, 16 Oakleaf Ave., Oak Park CA 91377" was "Good As Addressed." (See Exh. D

annexed hereto). Thus, according to the U. S. Postal Service, Edward Dalmau conducts

the reservation, bookings, mail, financial, insurance and back office operations for Hotel

Punta Colorada at these three California offices (Calabasas Road, Park Sorrento and

Oakleaf Ave.) which he operates for HPC within a five mile radius north of Los Angeles,

just as the Colvins long suspected when they targeted all their mail, phone calls,

payments and faxes to HPC and to Dalmau to this area in California over the course of

the last five years. Carlos Von Wormer in his multiple "declarations" is just not being

16

forthright with the Court, as common sense would verify, when he tries to ignore these facts. Defendants have made three motions already based on these half-truths and misstatements. Clearly defendants should not now be allowed a fourth bite at the apple now, to untangle the thickets of confusion that Carlos Van Wormer has sown.

25.     The bottom line is HPC is and was present in California where it is authorized to do business. As a company active in California, notwithstanding Carlos's obfuscations to the contrary, it has to have an agent in the State of California to receive service. Whether this is Eddie Dalmau, who has been served, or its parent company's agent, Julian Myers, who has been served (as a matter of the control group argument made in footnote 9 supra) or Johnny Perez who was first served (former Exh. B) or Bobby Van Wormer (served by follow up mailing to Calabasas) (former Exh. B) who has been served, clearly HPC has now been served in California in English, the native language of all these American agents, owners and employees of HPC. As stated, and by the defendants' own admissions, HPC is clearly an American-owned company, active in, and with three known offices in California. Defendants' unsupported and contradictory statements to the contrary must simply be disregarded.

26.     Under these circumstances, to be forced, at HPC's expense (of $1200-$1500) to translate the Summons and Amended Complaint into Spanish, to then have it re-served on expatriate Americans in Mexico, to then be mailed back to HPC's California and New Jersey attorneys who all read English (who have already read the pleadings in English) would be just silly and redundant, and the unsubstantiated and inconsistent convolutions of Carlos Von Wormer simply do not justify such a ridiculous outcome.

17

27.     Significantly in their most-recent August 20, 2008 motion, HPC does not object to the service on Eddie Dalmau at their Oak Park office which took place almost two weeks before on August 8 (and Eddie Dalmau has never objected to anyone regarding this service either). So such silence, compared to HPC's vociferous objections to our prior services on Perez and Meyers, must be accepted as defendants' admission that the service on Dalmau was valid for HPC, as Dalmau himself admitted. (Exh. B hereto).

## RESPONSE TO LEGAL AUTHORITIES CITED BY DEFENDANTS IN THEIR MEMORANDUM OF POINTS

28.     Next, defendants' belief that the breach of maritime contract entered into and printed in New Jersey can only be based on an "intentional action," "aimed at plaintiffs" which causes "harm to plaintiff in New Jersey" is simply not true. In support they cite the easily distinguishable case of <u>Carnival Cruise Lines v. Shute</u>, 499 US 585, 589, which did not say any such thing, for the simple reason that, in that case, after the lower Washington state court upheld the Washington Plaintiff's right to sue the defendant cruise line in Washington, for a fall on the ship that took place off the coast of Mexico (based on defendant's promotional solicitations of plaintiff in state) the U.S. Supreme Court directed that the case proceed, if at all, in Florida, based on a contractually negotiated forum selection clause contractually negotiated far from Florida.[18] **Thus, neither the lower courts nor the Supreme Court (nor the parties either) believed the situs of the fall, over navigable waters off the coast of Mexico, had anything to do with the jurisdiction for the trial at all, where the only dispute was between**

---

[18] Suit in New Jersey, of course, was made possible here by the absence of any forum selection clause in the subject Maritime Contract entered into here in New Jersey.

Washington and Florida. So how can this case stand for the legal point alleged by

the defendant, that the situs of maritime injury controls, where the dozens of cases

we have cited and reviewed (including <u>Pike v. Clinton Fishpacking, Inc.</u>, 143 F.

Supp. 2d 162 (D. Mass., 2001))[19] have rejected this principal out of hand? In

maritime contract actions, like <u>Shute</u> and <u>Pike,</u> the situs of the injury rarely has anything

to do with proper forum for jurisdiction.

29.     Next, defendants cite <u>Harlow v. Children's Hospital</u>, 434 F 3d 50, which

again is mostly irrelevant to the current case and easily distinguishable:

•     First, <u>Harlow</u> involved a local malpractice action (with no breach

of contract claim being asserted) being brought in Maine against a Massachusetts hospital

with motives of improper forum selection being involved, since the Massachusetts

limitations period had expired while Maine's had not.

•     No evidence of any contract or insurance documents being faxed

from defendants to plaintiffs were evident.

•     All defendants contracts and contacts with parties in Maine that

plaintiff relied on to support Maine jurisdiction were with third parties, not with the

Plaintiffs.

•     There was no admiralty/international law issue present and no

constitutional right being claimed by Plaintiff to litigate against his fellow Americans in

the US Federal Court rather than in a foreign country where the accident occurred, which

here was not even on foreign soil, but in the waterways off the coast of a foreign country.

---

[19] Pike allowed Massachusetts fishermen, solicited to fish in the Pacific, to sue their Washington employer
in Massachusetts as to injuries suffered in Alaskan waters. Nowhere did <u>Pike</u> say that jurisdiction depended
on proving an injury occurred in Massachusetts and I know of no case that ever said such a thing. Locus of
injury can be relevant, but is certainly not preclusively dispositive, especially in contract cases.

(As stated, in our case plaintiffs' constitutional rights would be violated if she were compelled to forego her diversity rights to litigate against her fellow, bi-lingual Americans (present in California) in the foreign country where the subject navigable waters touched, where the defendant Americans speak the local language while the Plaintiffs don't). Based on this, in our case, as opposed to Harlow, the expatriate Americans who operate the defendant companies out of California, with a full exploitation by them of both interstate and international commerce, cannot object to being sued in the United States. Given the admiralty issues, our case is completely different from the local malpractice claims addressed in Harlow where it was held that the local hospital was not engaged in interstate and international commerce though clearly here, our defendants were so engaged. Here defendants criss-crossed the US attending sports fishing trade shows where they met and solicited plaintiffs.

- The advertising cited in Harlow was found neither to be related to the Plaintiffs claims, or purposefully directed to the plaintiffs, which is clearly different from what we have here.

- The Massachusetts hospital was not engaged in interstate commerce or delivery of goods or assets across state lines (such as occurred here with defendants' insurance certificate, which defendants did send across state lines, to the plaintiff). The Harlow court found that the defendants' Maine contracts, and mailings across state lines relied on by plaintiff, were not sent to plaintiff (as they were in our case) and they were not related to plaintiff's malpractice claim. Here, particularly with plaintiffs contract cause of action, the formation of the subject contract (printed by Defendants in New Jersey) and the defendants' purposeful acts in New Jersey are related

to the claimed breach of contract, and the defendants' primary relevant asset (the insurance certificate) was sent to plaintiffs, directly.[20] The only way defendants can claim otherwise (which is not true either) is to pretend that in our case, as in Harlow, there is no claim for breach of contract.

30.   Lastly, to further support the defendants' excessively narrow test, that the injuries claimed have to occur in the forum where the diversity action is brought, defendants cite O'Connor v. Sandelane Hotel Company 496 F.3d 312 (3d Cir. 2007) where, contrary to defendants argument, the Third Circuit Court on appeal, reversed the Pennsylvania District Court's dismissal, on lack of minimal contracts grounds, of a tort claim by the Pennsylvania plaintiffs arising from a fall at the defendant's Barbados Hotel. Minimal contracts were found for:

•      "Mail and telephone communications sent by the defendant [Hotel]" into the forum "that indicated a deliberate targeting of the forum" (496 F.3d at 317) manifested by the forwarding to the Plaintiffs (who were prior patrons of the hotel) of seasonal newsletters and a single brochure, supported by numerous phone calls between the parties that led to the subject booking.

•      In the O'Connor case, no contracts, confirmations or insurance certificates were faxed to plaintiffs in state, such as the Colvins received, which makes our case even stronger than O'Connor.

---

[20] To be more precise, by defendants' deliberate operations, defendant printed this insurance certificate, with an explanatory cover letter, on plaintiffs' fax machine in New Jersey.

- In response to defendants' attempt here to shun plaintiffs' contract cause

of action, by mere silence alone,[21] O'Connor goes on to explain the role contract

negotiations play in providing the minimum jurisdictional contacts even in a pure tort

action (such as O'Connor was).

> The link is also much closer than mere but-for causation. Pennsylvania law allows individuals and businesses to make and enforce binding agreements. Sandy Lane availed itself of that opportunity, and, through its mailings and phone calls to Pennsylvania,[22] it formed a contract for spa services. The hotel acquired certain rights under that contract, and with those rights came accompanying obligations. Like all services contracts, the spa agreement contained an implied promise that Sandy Lane would "exercise due care in performing the services required." *See* Richard A. Lord, 23 *Williston on Contracts* § 63.25, at 525-26 (4th ed.2002). In the case before us, the O'Connors contend that Sandy Lane failed to do exactly that. As such, their claims directly and closely relate to a continuing contractual obligation that arose in Pennsylvania.

> True enough, the O'Connors' claims sound in tort, not contract. They claim that Sandy Lane breached a social duty that existed independent of and in addition to the hotel's contractual obligations. *See St. Clair v. B & L Paving Co.,* 270 Pa. Super. 277, 411 A.2d 525, 526 (1979) ("Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a social duty imposed by the law to act without negligence."). Our relatedness analysis, however, requires neither proximate causation nor substantive relevance. *See Miller Yacht,* 384 F.3d at 99-100. It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims. The O'Connors claim Sandy Lane breached a duty that is *identical* to a contractual duty assumed by the hotel in Pennsylvania. So intimate a link justifies the exercise of specific jurisdiction as a quid pro quo for Sandy Lane's enjoyment of the right to form binding contracts in

---

[21] As noted in FN 9 supra, the O'Connor case, relied on by defendants, held that all factual claims must be resolved against the defendant moving to dismiss and in favor of Plaintiffs.

[22] Pennsylvania there had the same long arm rule that New Jersey enjoys: "as broad as due process will permit."

> Pennsylvania. We therefore hold that the O'Connors' claims
> "arise out of or relate to" Sandy Lane's Pennsylvania contacts.

496 F. 3d at 323-24. This analysis certainly dictates that we reach here the same result

reached in O'Connor, to find jurisdiction over the defendants within the plaintiff's forum

based primarily on the contract negotiations which took place, in our case, in New Jersey.

      31.    To rebut the rule of O'Connor (which defendants first brought up)

defendants next state "It is the law in this Circuit . . . . . that solicitation of business in

New Jersey is not sufficient to establish personal jurisdiction over an out-of-state

defendant" citing Amberson Holdings v. Westside Story Newspaper, 110 F Supp 2d 332

(DNJ 2000) a trademark infringement claim. In that case the plaintiff's attempt to base

specific jurisdiction in New Jersey over a California defendant, based on its use of a non-

party web hosting company located in New Jersey, was rejected given that there were no

contracts whatsoever between the plaintiff owner of the trademark and the California

defendant who, without permission, used the mark for its internet address. As in Harlow,

the Court rejected jurisdiction based solely on contractual relations maintained in the

forum between the defendant and third parties, where the plaintiff was not party to the

contract(s).

      32.    According to defendants Amberson "held that even the act of entering into

a contract without more cannot serve as a basis for establishing personal jurisdiction over

an out-of-state defendant." What defendants failed to state is that Amberson, like Harlow,

held that the act of entering into a contract WITH AN UNNAMED THIRD PARTY

within the forum, cannot serve as a basis for personal jurisdiction over an out of state

party where the plaintiff, in state, WAS NOT PARTY TO THAT CONTRACT! Of

course, the rule is exactly the opposite where the in-state contract, which gives rise to the

claim, is with the plaintiff, a rather technical difference that defendants were not able to figure out. Under these cases, cited by the bushel load by plaintiffs, jurisdiction under the "transaction of business "standard can be based on the location where the contract between the named parties was negotiated, printed, signed or entered into, or where payment was collected, irregardless of where the harm occurred. The key is whether the plaintiff was a party to the subject contract. In our case plaintiffs were. In Amberson and Harlow, plaintiffs were not. See cases cited in our prior brief. This is a legal principle we believed was beyond cavil though, we note in our case, that defendants' breaches and negligence did lead to medical treatment for Mrs. Colvin in New Jersey which caused her pain (which would certainly satisfy defendants' new excessively-narrow test).

33.     In Summation, jurisdiction over both the defendants here in New Jersey is fair and reasonable for the same reasons set forth in Pike (Massachusetts fisherman solicited to Alaska) and O'Connor, cited with approval by defendant. The multiple contracts with the Colvins and other solicited guests in New Jersey, prepared and submitted into the state for HPC, by its now-served employee Eddie Dalmau (who for defendants, remains unmentioned and silent) support this jurisdiction. Dalmau's multiple contacts with New Jersey were purposeful, specifically related both to Plaintiffs' contract and tort claims, and were specifically directed at Plaintiff in New Jersey. They involved the printing of the subject contract in New Jersey, and the voluntary and purposeful submission of a major relevant asset (defendants' insurance certificate) to the Colvins in New Jersey in order to "help" them after the injury.

34.     While under the O'Connor case cited by defendants with approval, these facts must be accepted as true, it is hard to see how these facts, not mentioned on contracted defendants at all, are even contested since:

a.     Defendants admitted they are intentionally ignoring Plaintiffs' breach of contract claim because they regard it as "insignificant" on grounds of damages and,

b.     They cannot, for obvious reasons, acknowledge the existence of Dalmau, or his three office locations, or the service on him, all in California. For these reason they cannot readily submit any statement from him to rebut Plaintiffs' statements regarding what Dalmau did and said, or what his wife Shannon (the Chief Operating Officer of Van Wormer Resorts per our former Exh. N) did and said.

35.     Based on this the defendants' multiple motions to dismiss must all be denied, and service on Myers and Dalmau should be deemed valid to secure personal jurisdiction over Hotel Punta Colorada which we can now confirm operates three offices in Calabasas and Oak Park, California for the purposes of confirming contractual bookings and for collecting the interstate payments that relate thereto (including from plaintiff and from its other New Jersey patrons).

36.     If for some reason additional service in Mexico is required we would request that defendants be ordered to submit $1,500.00 or a bond to secure the cost of this service since they have refused to voluntarily submit to service by mailed Notice under FRCP 4.

WHEREFORE, the Defendants' motions should be denied in all particulars, service and jurisdiction should be confirmed in New Jersey, or failing that the case

should be removed to California for trial and the Court should grant such other and

further relief as to the Court seems just.

Dated: Port Jefferson Station, New York
         September 4, 2008

GEORGE W. CLARKE (gc-3071)

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

••••••••••••••••••••••••••••••••••••••••

MARY P. COLVIN and JOHN COLVIN

Plaintiffs,

-against-

Civil Action No.:
07-4826 (WJM)

VAN WORMER RESORTS, INC. and HOTEL
PUNTA COLORADA, S.A. a/k/a PUNTA COLORADO,

Defendants.

••••••••••••••••••••••••••••••••••••••••

## PLAINTIFFS' EXHIBITS FOR OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS
## RETURNABLE SEPT. 15, 2008

TIERNEY & TIERNEY, ESQS.
GEORGE W. CLARKE, ESQ.
*Attorneys for Plaintiffs Colvin*
409 Route 112, PO Box 995
Port Jefferson Station, New York 11776
(631) 928-1444

COURTER, KOBERT and COHEN
NJ Counsel for Plaintiffs
1001 Route 517
Hackettstown, New Jersey 07840
Telephone (908) 852-2600

| Attorney or Party without Attorney:<br>John A. Tierney, Esq.<br>Tierney & Tierney Attorneys at Law<br>409 Route 112<br>P.O. Box 995<br>Port Jefferson Station, NY 11776<br>Telephone No: 631-928-1444    FAX No: 631-928-5705 | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney for: Plaintiff | | Ref. No or File No.: | | |
| Insert name of Court, and Judicial District and Branch Court:<br>United States District Court - District of New Jersey | | | | |
| Plaintiff: Mary P. Colvin and John Colvin | | | | |
| Defendant: Van Wormer Resorts, Inc. | | | | |

| AFFIDAVIT OF SERVICE<br>Summons/Complaint | Hearing Date: | Time: | Dept/Div. | Case Number:<br>07CIV4826(WJM) |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons in a Civil Action; Amended Complaint

*3. a. Party served:*         Hotel Punta Colorada, SA
  *b. Person served:*      Julian B. Myers, Agent for Service

*4. Address where the party was served:*    401 West A Street, # 2600
                                          San Diego, CA 92101

*5. I served the party:*
  a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of
    process for the party (1) on: Wed., Jul. 16, 2008 (2) at: 12:03PM

*7. Person Who Served Papers:*                                       *Fee for Service:*
  a. Kenneth Robert Maskil, Jr.               I Declare under penalty of perjury under the laws of the State of
  b. **Class Action Research &**             New Jersey that the foregoing is true and correct.
    Litigation Support Services, Inc.
    ℘ O Box 740
    Penryn, CA 95663                   _07/21/08_                   
  c. (866) 663-9590, FAX (866) 663-4955       (Date)                          (Signature)

$Ex_H A$

| Attorney or Party without Attorney: | | | For Court Use Only |
|---|---|---|---|
| John A. Tierney, Esq.<br>Tierney & Tierney Attorneys at Law<br>409 Route 112<br>P.O. Box 995<br>Port Jefferson Station, NY  11776 | | | |
| Telephone No: 631-928-1444        FAX No: 631-928-5705 | | | |
| | | Ref. No. or File No.: | |
| Attorney for: Plaintiff | | | |
| Insert name of Court, and Judicial District and Branch Court: | | | |
| United States District Court - District of New Jersey | | | |
| Plaintiff: Mary P. Colvin and John Colvin | | | |
| Defendant: Van Wormer Resorts, Inc. | | | |

| AFFIDAVIT OF SERVICE<br>Summons/Complaint | Hearing Date: | Time: | Dept/Div: | Case Number:<br>07CIV4826(WJM) |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons in a Civil Action; Amended Complaint

*3. a. Party served:*                    Hotel Punta Colorada, SA
   *b. Person served:*                   Edward Dalmau, Authorized to Accept Service of Process

*4. Address where the party was served:*   16 Oakleaf Avenue
                                           Oak Park, CA  91377

*5. I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Fri., Aug. 08, 2008 (2) at: 7:50PM

*7. Person Who Served Papers:*                  *Fee for Service:*
   a. Paul M. Iaccino                           I Declare under penalty of perjury under the laws of the State of
   b. **Class Action Research & Litigation**    New Jersey that the foregoing is true and correct.
      P O Box 740
      Penryn, CA  95663
   c. (866) 663-9590, FAX (866) 663-4955     8-18-8
                                               _____(Date)_____     _____(Signature)_____



State of California
County of Ventura

BRETT PETERS
COMM. # 1567203
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. APRIL 8, 2009

8. **SUBSCRIBED AND SWORN to me, a Notary Public in and for said County and State.**

My Commission Expires  04-08-09
                       (Date)

AFFIDAVIT OF SERVICE
Summons/Complaint                          (Notary Public)          jotle.103573

$Ex_H \ B$

# Class Action Research &

**Registered California Process Service**

Litigation Support Services, Inc. P.O. Box 740 Penryn, CA 95663 Phone: (866) 663-9590

103573

Postmaster:

Calabasas, CA. 91372

Wed, Jul. 30, 2008

## Request for Change of Address of Boxholder
## Information Needed for Service of Legal Process

*Please furnish the new address, or the name and street address if boxholder for the following:*

Name: Hotel Punta Colorada, SA

Address: P O Box 9016

Calabasas, CA. 91372

Note: *The name and last known address are required for change of address information. The name if known, and Post Office Box address are required for boxholder information.*

*The following information is provided in accordance with 39 CFR 265 6 (d) (6) (ii). There is no fee for providing boxholder information. The fee for providing change of address information is waived in accordance with 39 CFR 265.6(d) (1) and (2) and corresponding Administrative Support Manual 352 44a and b.*

1. *Capacity of requestor:* **Registered Process Server of** Sacramento County 2005-27

2. *State of regulation that enpowers me to serve process:* **Section 22350 California Business and Professions Code.**

3. The name of all known parties to the litigation:
   Mary P. Colvin and John Colvin vs. Van Wormer Resorts, Inc.

4. The Court in which the case has been or will be heard:
   United States District Court - District of New Jersey
   50 WALNUT ST., RM 4015 07101-0419 NEWARK, NJ

5. The docket or other identifying number is one has been issued: 07CIV4826(WJM)

6. The capacity in which this individual is to be served: **Defendant**

### Warning

The submission of false information to obtain and use change of address information, or boxholder information for any purpose other than the service of legal process in connection with actual or prospective litigation could result in criminal penalties including a fine of up to $10,000 or imprisonment or (2) to avoid payment of the fee or change of address informaton of not more than 5 years, or both (title 18 U.S.C section 1001).

I certify that the above information is true and that the address information is needed and will be used solely for Service of Legal Process in connnection with actual or prospective litigation.

Janis Dingman

**Class Action Research &**
Litigation Support Services, Inc.
P O Box 740
Penryn, CA. 95663

| FOR POST OFFICE USE ONLY | **Please Postmark** |
|---|---|

New Address, or Box Holders's Name & Street Address

___ Not known at Address given.
___ Moved, left no forwarding Address.
___ No such Address
___ Good as Addressed.
___ No change of address order on file.

23621 Park Sorento

Calabasas Ca 91302

USPS 2008 5 AUG 91302

EXH. C

# Class Action Research &

103573

**Registered California Process Service**

Litigation Support Services, Inc.  P O Box 740  Penryn, CA  95663  Phone: (866) 663-9590

Postmaster:
Oak Park, CA.91377

Fri, Jul. 18, 2008

## Request for Change of Address of Boxholder
## Information Needed for Service of Legal Process

*Please furnish the new address, or the name and street address if boxholder for the following:*
  Name:  Hotel Punta Colorada, SA
Address:  c/o Edward Dalmau
  16 Oakleaf Avenue
  Oak Park, CA.91377
  Note:  *The name and last known address are required for change of address information. The name if known, and Post Office Box address are required for boxholder information.*

*The following information is provided in accordance with 39 CFR 265.6 (d) (6) (ii). There is no fee for providing boxholder information. The fee for providing change of address information is waived in accordance with 39 CFR 265.6(d) (1) and (2) and corresponding Administrative Support Manual 352.44a and b.*

1. *Capacity of requestor:* **Registered Process Server of** Sacramento County 2005-27

2. *State of regulation that enpowers me to serve process:* **Section 22350 California Business and Professions Code.**

3. The name of all known parties to the litigation:
   Mary P. Colvin and John Colvin vs. Van Wormer Resorts, Inc.

4. The Court in which the case has been or will be heard:
   United States District Court - District of New Jersey
   50 WALNUT ST., RM 4015 07101-0419 NEWARK, NJ

5. The docket or other identifying number is one has been issued: **07CIV4826(WJM)**

6. The capacity in which this individual is to be served: **Defendant**

### Warning
The submission of false information to obtain and use change of address information, or boxholder information for any purpose other than the service of legal process in connection with actual or prospective litigation could result in criminal penalties including a fine of up to $10,000 or imprisonment or (2) to avoid payment of the fee or change of address informaton of not more than 5 years, or both (title 18 U.S.C section 1001).

I certify that the above information is true and that the address information is needed and will be used solely for Service of Legal Process in connnection with actual or prospective litigation.

Janis  Dingman

**Class Action Research &**
**Litigation Support Services, Inc.**
**P O Box 740**
**Penryn, CA.  95663**

| FOR POST OFFICE USE ONLY | **Please Postmark** |
|---|---|

*New Address, or Box Holders's Name & Street Address*

___ Not known at Address given.
___ Moved, left no forwarding Address.
___ No such Address.
_✗_ Good as Addressed.
___ No change of address order on file.

EXH. D



Van Wormer Resorts

23679 Calabasas Rd., #769 · Calabasas, CA 91302
E-Mail: vanwormerresorts@sbcglobal.net

SEP 2 6 2007

TIERNEY + TIERNEY, ESQS.

409 ROUTE 112
P.O. BOX 995
PORT JEFFERSON STATION, NY 11776

11776+0995