

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTIN**
    **JUDGE**

## LETTER OPINION

December 12, 2008

George W. Clarke
Tierney & Tierney
409 Route 112
Port Jefferson Station, New York 11776

James F. Moscagiuri
Courter Kobert & Cohen
1001 Route 517
Hackettstown, NJ 07840
*(Attorney for Plaintiffs Mary Colvin and John Colvin)*

David R. Clark
Higgs, Fletcher & Mack LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101

George M. Holland
Lentz & Gengaro
347 Mt. Pleasant Avenue, Suite 203
West Orange, NJ 07052
*(Attorney for Defendants Hotel Punta Colorada, S.A. and Van Wormer Resorts, Inc.)*

    Re:    **Colvin et al. v. Van Wormer Resorts, Inc. et al.**
           <u>**Civil Action No. 2:07-CV-04826 (WJM)**</u>

Dear Counsel:

    This matter comes before the court on Defendants Van Wormer Resorts, Inc. and Hotel Punta Colorada, S.A.'s two separate motions to dismiss for lack of personal

jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(2).  For the below stated reasons, the Defendants' two separate motions to dismiss for lack of jurisdiction are **DENIED**.

## BACKGROUND

Hotel Punta Colorada is a thirty-nine room Mexican fishing camp/hotel located on the East Coast of the Baja Peninsula.  The hotel is owned primarily by Eduardo Van Wormer with a minority stake owned by his brother Carlos Van Wormer.  In addition to Hotel Punta Colorada, the Van Wormer Family operates several other Mexican hotels, including Hotel Palmas De Cortez and Hotel Playa Del Sol, as well as the California based booking agency Van Wormer Resorts, Inc.  The three Van Wormer Brothers–Eduardo, Carlos, and Roberto–are the sole shareholders of Van Wormer Resorts, Inc.

Plaintiffs are retired New Jersey residents, who reside year round in Budd Lake.  Avid fishermen, Plaintiffs heard about Hotel Punta Colorada through advertisements in the Saltwater Sportsman.  Based on these advertisements, Plaintiffs booked two vacations to the "sports fishing mecca" in 2003 and 2004.  Following these enjoyable trips, Plaintiffs called Baja Fishing & Resorts Co.,[1] in February 2005, to book a trip for October 2005.  Plaintiffs received by fax a reservation confirmation on February 4, 2005 and a final statement on September 26, 2005 from "Punta Colorada."

Shortly before the trip, on October 3, 2005, Van Wormer Resorts, Inc. sent Plaintiffs a letter informing them about a change in operations for the Van Wormer family resorts.  The letter defined "Van Wormer family resorts" as "Hotel Palmas De Cortez, Hotel Playa Del Sol and Hotel Punta Colorada."  The letter went on to state that "[a]s of October 3rd, 2005, the Van Wormer family is opening their own office handling reservations, payments, and *all other matters related to the Van Wormer family resorts*."

Plaintiffs arrived at Hotel Punta Colorada on October 6, 2005 where they joined between four to six other New Jersey residents who were also staying at the fishing camp.  Two days later, while boarding a boat via a movable dock, Mary Colvin alleges that she stepped into a hole in the dock with her right foot.  Her leg plunged through the break in the dock, up to her groin.  Since only one leg broke through the dock, she fell into a painful split.  Her body twisted and rusty nails punctured her leg in several spots.  Several New Jersey residents witnessed the condition of the dock after the injury.

---

[1] Baja Fishing & Resorts Co. was the predecessor booking agency for Hotel Punta Colorada prior to Van Wormer Resorts, Inc.

Following the accident, Mary Colvin received treatment from a local Mexican clinic, where doctors informed her to return to New Jersey. Her legs swelled and she needed a tetanus shot to treat the puncture wounds. Since that time, she alleges that she has required continued care.

As a result of these injuries, on October 5, 2007, Plaintiffs filed the instant complaint against Defendants seeking damages, as well as loss of consortium. Defendants argue that the Court lacks jurisdiction over either Defendant.

## **DISCUSSION**

As an initial matter, the Court possesses subject matter jurisdiction to hear this case by reason of diversity jurisdiction and amount in controversy pursuant to 28 U.S.C. § 1332. The parties are diverse and Plaintiffs claim $775,000 in damages. Plaintiffs are residents of New Jersey, while Defendant Van Wormer Resorts, Inc. is a California Corporation and Hotel Punta Colorada is a Mexican entity.[2]

In New Jersey, the appropriate exercise of personal jurisdiction over non-resident defendants is allowed to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). To assert *in personam* jurisdiction over a non-resident defendant consistent with the Fourteenth Amendment, a plaintiff must show that the defendant had minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945) (citation omitted).

Personal jurisdiction arises when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985). In other words, a defendant must have engaged in some purposeful conduct within the forum "such that he should reasonably anticipate being

---

[2] Plaintiffs present at length several irrelevant maritime arguments to establish subject matter jurisdiction. Specifically, Plaintiffs allege federal question subject matter jurisdiction based on an alleged maritime contract between the parties. Even if the Court found subject matter jurisdiction on the basis of a maritime contract, this would not change the below stated personal jurisdiction analysis. The principals announced in diversity jurisdiction cases apply equally in non-diversity cases, such as admiralty. *See DeJames v. Magnificence Carrier, Inc.*, 654 F.2d 280, 283 (3d Cir. 1981); *Fraley v. Chesapeake & O. Ry. Co.*, 397 F.2d 1, 3 (3d Cir. 1968).

haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L.Ed. 2d 490 (1980). To demonstrate such conduct, a "plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S. Ct. 1868, 80 L.Ed. 2d 404 (1984)).

A motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) shifts the burden to the plaintiff to establish sufficient facts showing that jurisdiction is proper. *See Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). On a motion to dismiss for lack of personal jurisdiction, the "plaintiff need only establish a prima facie case of personal jurisdiction," and the Court must accept Plaintiffs' allegations as true and resolve all disputed facts in their favor. *Miller Yacht Sales*, 384 F.3d at 97. In a suit with multiple defendants, the court must possess personal jurisdiction over each defendant. *Lighting One, Inc. v. Spring City Elec. Mfg., Co.*, Civ. No. 07-cv-736, 2007 WL 2033822, at * 2 (D.N.J July 10, 2007).

**A.     Specific Jurisdiction**

Plaintiffs do not allege that Defendants' contacts with the forum are so "continuous and systematic" as to give rise to general jurisdiction, the Court's inquiry is thus limited to specific jurisdiction. In analyzing specific personal jurisdiction, courts must examine the relationship among the parties, the forum, and the litigation. *Miller Yacht Sales*, 384 F.3d at 96 (citation omitted). A single contact with the forum can create a substantial connection, so long as the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472. Exercising jurisdiction in such a case must comport with fair play and substantial justice. *Id.* at 476.

Based on the relationship of the parties, the forum, and the litigation, Hotel Punta Colorada and its agent Van Wormer Resorts Inc. purposefully directed activities towards New Jersey residents. In general, national advertising and the mailing of information to former guests of a hotel are not enough to establish minimum contacts to support jurisdiction in New Jersey. *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743 (D.N.J. 1999). Advertisements, however, can support jurisdiction if targeted specifically at New Jersey consumers, or any other geographic group. *See Partesi v. Carvnival Cruise Lines, Inc.*, Civ. No. 90-275, 1990 WL 302890, at *1 (D.N.J. Nov. 26, 1990) (declining to find

4

jurisdiction based on advertisements that did "not target[] specifically at New Jersey consumers (or any other geographic group) . . . .")

In the instant matter, Hotel Punta Colorada specifically targeted New Jersey residents by advertising in the niche publication, the Saltwater Sportsman. Hotel Punta Colorada intended to attract avid saltwater fisherman to its fishing camp. The hotel chose to advertise in Saltwater Sportsman, because its circulation targeted fishermen in a specific geographic area, namely coastal states such as New Jersey. The Saltwater Sportsman's masthead supports this conclusion. The magazine's sales force is predominantly located in coastal regions such as the Northeast, Mid-Atlantic, Southeast, and West Coast, presumably to find advertisers that want to sell ads in these markets.

Not only did these purposeful advertisements attract Plaintiffs to Hotel Punta Colorada, it also incentivized other New Jersey residents to book their vacation with the hotel. Hotel Punta Colorada entered into multiple contracts with New Jersey residents. At the time of Plaintiffs accident, at least four to six other New Jersey residents were present at the fishing camp, a significant number for a thirty-six room hotel.

Additionally, Hotel Punta Colorada's purposeful contacts will be attributed to Van Wormer Resorts, Inc. as a result of an agency relationship between the two parties. Under New Jersey state and federal law, an agent can possess the "actual authority" to act on behalf of its principal. *See United States v. Martinez*, 613 F.2d 473, 481 (3d Cir. 1980); *Reynolds Offset Co. v. Summer*, 58 N.J. Super. 542, 156 A.2d 737 (App. Div. 1959). A principal manifests express authority through words or other conduct. *See* Restatement (Second) of Agency § 26. The principal "specif[ies] minutely what the agent is to do." *Id.* § 7 cmt. c.

Here, Hotel Punta Colorada directly imbued Van Wormer Resorts, with the actual authority to handle all of its matters. On October 3, 2005, prior to the trip, Plaintiffs' received a letter from Van Wormer Resorts, Inc. indicating that "the Van Wormer family is opening their own office handing reservations, payments and *all other matters related to the Van Wormer family resorts*." (emphasis added). The broad phrase "all other matters" manifested that Van Wormer Resorts, Inc. had the express authority to act on behalf of Hotel Punta Colorada, not just for reservations, but for other matters such as advertising and business resulting from such advertisements. Since Van Wormer Resorts Inc. had the authority to act on behalf of Hotel Punta Colorada for advertising and business resulting from advertising, Van Wormer Resorts, Inc. as an agent of Hotel Punta Colorada is subject to jurisdiction in New Jersey through Hotel Punta Colorada's contacts with the state.

**B.     Traditional Notions of Fair Play and Justice**

Even though sufficient minimum contacts exist, the Court cannot end its analysis. For jurisdiction to be proper, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

The Supreme Court has identified several factors to consider when balancing jurisdictional reasonableness. In specific, "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," *Burger King*, 471 U.S. at 477 (quotation marks omitted), and "[t]he procedural and substantive interests of other nations," *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 107 S. Ct. 1026, 94 L.Ed. 2d 92 (1987).

In this case, Defendants failed to present a compelling case that the exercise of personal jurisdiction would be unreasonable. Defendants present several arguments to avoid personal jurisdiction, namely that neither Defendants reside or do business in New Jersey, that the accident did not occur in New Jersey, and that all of the relevant witnesses live thousands of miles from New Jersey.

These arguments are unpersuasive. With regards to the location of witnesses, the Plaintiffs reside in New Jersey, the Plaintiffs' doctors reside in New Jersey, and witnesses to the condition of the dock after the accident also reside in New Jersey. As for witnesses in Mexico or California, there is nothing in the record to indicate these witnesses would be unable or would refuse to come to the New Jersey to testify. *See Derbin v. Biocompatibles International PLC*, Civ. No. 97-6854, 1998 WL 551976, at *4 (E.D. Pa. Aug. 11, 1998). Moreover, with regards to the fact that Defendants do not reside or do business in New Jersey, the Court addressed these issues when determining the sufficiency of Defendants' minimum contacts.

While at first blush it appears that Van Wormer Resorts, Inc. and Hotel Punta Colorada would be heavily burdened by defending in New Jersey, because of the need to travel a significant distance to litigate, both entities share legal representation, operate under an agency relationship, and have common ownership. Even if Californian or Mexico was the forum for this case, a portion of Defendants witnesses would need to

travel to participate in this litigation.  Based on advances in modern transportation and communication, *see Burger King*, 471 U.S. at 474, the Court finds little distinction in the burden of traveling to New Jersey as opposed to these two other venues.

In light of New Jersey's well recognized interest in compensating its injured domiciliaries, *see Dent v. Cunningham*, 786 F.2d 173, 177 (3d Cir. 1986), the exercise of personal jurisdiction over defendants in this case does not violate traditional notions of fair play and substantial justice and is therefore reasonable.

## **CONCLUSION**

For the above stated reasons, Defendants' two separate motions to dismiss for lack of jurisdiction are **DENIED**.  An appropriate Order accompanies this Letter Opinion.

s/William J. Martini  
**William J. Martini, U.S.D.J.**